UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 18-22258-CIV-MARTINEZ-OTAZO-REYES

JONATHAN HECKMAN, on behalf of
himself and all others similarly situated,

    Plaintiff,

vs.

SBE ENT HOLDINGS, LLC, MORGANS
HOTEL GROUP CO. LLC, MORGANS
HOTEL GROUP MANAGEMENT, LLC,
1100 WEST INVESTMENTS HOLDINGS
LLC, 1100 WEST INVESTMENTS, LLC,

    Defendants.
_____/

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

This CAUSE came before the Court on SBE ENT Holdings, LLC, Morgans Hotel Group Co., LLC, Morgans Hotel Group Management, LLC, 1100 West Investments Holdings, LLC, and 1100 West Investments, LLC's (collectively, "Defendants'") Motion to Dismiss and Incorporated Memorandum of Law Regarding the Class Action Complaint (the "Motion to Dismiss") [ECF No. 27], which seeks to dismiss Plaintiff's Class Action Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Jonathan Heckman ("Plaintiff") filed a response in opposition [ECF No. 28] and Defendants filed a reply [ECF No. 31]. The Court has reviewed the Motion to Dismiss, Plaintiff's response in opposition, Defendants' reply, the record in this action, and is otherwise fully advised in the premises.

**I.    Background**

Plaintiff filed his class action Complaint against Defendants, who allegedly own, operate, or control the Mondrian South Beach Hotel (hereinafter, the "Hotel"), alleging violations of the Florida Unfair Deceptive Trade Practices Act ("FDUTPA"), Florida Statutes 521.201 *et seq.* [ECF

- 2 -

No. 1]. In his Complaint, Plaintiff alleges that Defendants violated FDUTPA when the restaurants at the Hotel failed to provide any notice or adequate notice on restaurant menus and on the faces of customers' bills regarding the automatic gratuity or service charge that was included in the customers' checks. *Id.* ¶ 25. Further, Plaintiff alleges that Defendants' violations of FDUTPA are also based on Florida Statute 509.214, Miami-Dade County Ordinance 8A-110.1, and Rule 12A-1.0115 of the Florida Administrative Code. *See id. generally*.

Section 509.214 requires "[e]very public food service establishment which includes an automatic gratuity or service charge in the price of the meal shall include on the food menu and on the face of the bill provided to the customer notice that an automatic gratuity is included." Fla. Stat. § 509.214. Moreover, Section 8A-110.1(3) states, in relevant part:

> *Posting of Tipping Policies.* Each business shall provide notice of (A) whether the business includes an automatic tip in its bill, and if so, the amount or method of calculation of the automatic tip . . . This notice shall be posted conspicuously, either on a sign or in a statement on the business's menu or price listing in the same form and manner as the other items on the menu or price listing, and written in a legible manner in English, Spanish and Creole.

Miami-Dade County, Fla. Code § 8A-110.1(3) (2019). Furthermore, Rule 12A-1.0115(7) of the Florida Administrative Code ("FAC") provides for when a dealer's charge to a customer for "gratuities, tips, or similar charges" can be part of the "taxable sales price of the food or drink." Fla. Admin. Code r. 12A-1.0115(7).

Defendants' FDUTPA and FAC violations purportedly arise out of Plaintiff's visits to the Hotel in April 2018. First, Plaintiff alleges that on April 25, 2018, he went to the Pool Bar located at the Hotel, where he ordered food and/or beverage items from the Pool Bar menu, which were all "listed on the first page of a two page menu" [ECF No. 1 ¶¶ 40-41]. According to Plaintiff, at the bottom of the second page, "in type smaller and less bold than the items on the menu," the Pool Bar menu stated: "Applicable taxes and 18% service charge will be added to all checks." *Id.* ¶ 42. Plaintiff was then provided the check, which stated "20% Service Chg" under the subtotal of the

menu items on the check while the signature page stated, "Sales Tax 7%," "Resort Tax 2%," and "Total Tax 9%." *Id.* ¶ 44-45. The check also included a line under the foregoing taxes for "Additional Tip." *Id.* ¶ 46. Plaintiff signed the check and charged the "full amount to his room." *Id.* ¶ 47.

On April 26, 2018, Plaintiff ordered food and/or beverages through the in-room dining service at the Hotel. *Id.* ¶ 49. Plaintiff ordered from the in-room dining menu, which stated "$3.50 delivery charge and 20% gratuity is automatically added to each order" at the bottom of the menu [ECF No. 1 ¶ 50]. When Plaintiff's order was delivered to his room, the delivery charge was "$4.00" while the check included a tax charge that was greater than 9% of the check's subtotal and an empty line below the total of the check for "Additional Tip." *Id.* ¶ 51-53. Plaintiff paid the bill in full. *Id.* ¶ 54.

On the same date, Plaintiff visited the Mondrian Caffè located in the Hotel, where he ordered food and/or beverages from its menu and was ultimately presented with the check for said items. *Id.* ¶ 56-58. When he received the bill it included an automatic gratuity or service charge, stating "20% Service Chg." *Id.* ¶ 59. Plaintiff alleges that "[t]here was no mention on the Mondrian Caffè's menu" that the extra charge would be included in the check's subtotal. *Id.* ¶ 60. The check also included a charge for tax that was greater than 9% of the check's subtotal and an empty line below the total of the check for "Additional Tip" [ECF No. 1 ¶ 62-63]. After paying the bill in full with his debit card, Plaintiff states that the signature slip for the bill included another line for a "Tip." *Id.* ¶ 64.

Plaintiff further alleges violations of FDUTPA by Defendants at the Mondrian Bar located at the Hotel based "[u]pon information and belief," alleging that it "also includes an automatic

gratuity, service charge or other automatic fee to customers' bills without providing any notice whatsoever on the menu and face of the bill of the charge." *Id.* ¶ 67.

Defendants now move to dismiss Plaintiff's claims against the Mondrian Bar for lack of standing and Plaintiff's FDUTPA claims for actual damages [ECF No. 27].

## II. Legal Standards

### A. 12(b)(1)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) encompasses both challenges based on the court's lack of federal subject matter jurisdiction and challenges based on lack of standing." *Guerrero v. Target Corp.*, 889 F.Supp.2d 1348, 1352 (S.D. Fla. 2012) (citing *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."). As federal courts can only adjudicate actual cases or controversies, "Article III is a jurisdictional requirement that cannot be waived and, as such, may be brought up at any time in the proceeding." *Marty v. Anheuser-Busch Cos., LLC*, 43 F.Supp.3d 1333, 1339 (S.D. Fla. 2014).

### B. 12(b)(6)

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When a complaint fails "to state a claim upon which relief can be granted," it should be dismissed. Fed. R. Civ. P.

12(b)(6). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### III. Discussion

#### A. Article III Standing

A plaintiff "must satisfy three requirements to have standing under Article III of the Constitution: (1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (citing *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)). "These requirements are the irreducible minimum required by the Constitution for a plaintiff to proceed in federal court." *Id.* (citing *Shotz*, 256 F.3d at 1081) (internal quotations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). The Supreme Court has deemed the injury-in-fact requirement the "[f]irst and foremost of standing's three elements." *Spokeo*, 136 S.Ct. at 1547 (internal citations and quotations omitted).

In order to establish an injury-in-fact, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal citations and quotations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal citations and quotations omitted). In addition to alleging that his or her injury is particularized, a plaintiff must also allege a "*de facto*" concrete injury, which "must actually exist." *Id.* (internal citations omitted). Following *Spokeo*, the Eleventh Circuit has defined the injury-in-fact requirement to be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1290 (11th Cir. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d.351 (1992)).

Defendants argue that Plaintiff lacks standing because he has failed to allege that he visited, reviewed a menu, or received a bill from the Mondrian Bar [ECF No. 27, at 4-5]. In support of their argument, Defendants cite to a case from this district, *Fox v. Loews Corporation*, 309 F.Supp.3d 1241 (S.D. Fla. 2018). In that FDUTPA case the defendants also moved to dismiss plaintiff's amended complaint, arguing that the plaintiff there conceded he suffered no injury when alleging "he only visited restaurants that provided no notice rather than inadequate notice." *Id.* at 1250. The *Fox* court found the defendants' arguments to be "well-taken" and held that the plaintiff could not pursue his FDUTPA claims that arose "from inadequate disclosures in menus he never saw." *Id.* In finding that the plaintiff lacked standing, the *Fox* court cited to the Eleventh Circuit's decision in *Griffin*, which is binding on this Court. *See id.* (citing *Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987)).

In *Griffin*, the Eleventh Circuit vacated the district court's decision certifying plaintiff's Title VII class action. *Griffin*, 823 F.2d at 1481-82. There, the court began its analysis by "emphasiz[ing] that any analysis of class certification must begin with the issue of standing" and "whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues." *Id.* at 1482. The "individual injury requirement is not met by alleging 'that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent.'" *Id.* at 1483 (citing *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975)). In finding that the plaintiff lacked standing in that case, the court noted that "a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, 'even if the person described in the class definition would have standing themselves to sue.'" *Id.* (citing *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A July 1981)).

*Griffin* controls here. A review of Plaintiff's class action Complaint reveals that he has not alleged that he visited the Mondrian Bar, ordered from its menu, or paid a bill including additional gratuity without proper notice. As stated in *Griffin*, "[i]t is not enough that the conduct of which the plaintiff complains will injure *someone*." *Griffin*, 823 F.2d at 1483 (emphasis in original) (internal citations omitted). If Plaintiff seeks to plead FDUTPA violations at the Mondrian Bar, he

must show that she has standing to raise such claims. It cannot be said that Plaintiff suffered an injury-in-fact arising from Defendants' alleged FDUTPA violations at the Mondrian Bar when his Complaint is void of ever visiting the bar, ordering from its menu, or paying a bill that included a gratuity charge without proper notice. Other courts in this district have reached the same result. *Fox*, 309 F.Supp.3d at 1250-51; *Fox v. The Ritz-Carlton Hotel Co., LLC*, Case Number 17-24284 (S.D. Fla. Jan. 22, 2017) (dismissing claims against defendant when plaintiff did not even visit restaurants in question) [Order Dismissing Case for Lack of Subject-Matter Jurisdiction, ECF No. 31]. Furthermore, this Court recently dismissed a plaintiff's FDUTPA claims that were based on menus she never saw. *See De Lara v. Edition Management LLC*, Case Number 18-22630 (S.D. Fla. Feb. 5, 2019) [ECF No. 15]. Accordingly, Plaintiff's claims arising out of alleged FDUTPA violations at the Mondrian Bar are dismissed for lack of standing.

### B. Plaintiff's FDUTPA Cause of Action

In order to state a cause of action under FDUTPA, a plaintiff "must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla.Dist.Ct.App.2006)). "A deceptive act or practice is 'one that is likely to mislead consumers and unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *State Farm Mut. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F.Supp.3d 1291, 1300 (S.D. Fla. 2018) (citing *Hucke v. Kubra Data Transfer, Corp.*, 160 F.Supp.3d 1320, 1328 (S.D. Fla. 2015)). A plaintiff can satisfy the first element of a FDUTPA cause of action by alleging either a traditional or *per se* violation. *Id.* (internal citations omitted).

In their Motion to Dismiss, Defendants argue that Plaintiff's FDUTPA claims for actual damages should be dismissed because he has "concede[d] that he knew precisely the amount that he was paying and that he knowingly and voluntarily paid such amount" [ECF No. 27, at 6]. In his response in opposition, Plaintiff argues that Defendants cite no authority for their proposition and that the court in *Fox* rejected similar arguments [ECF No. 28, at 13].

In *Fox*, the defendants challenged plaintiff's standing because the plaintiff failed to allege that "he was forced to pay the automatic gratuities or service charges assessed" or that "he asked for removal of the charges but was denied." *Fox*, 309 F.Supp.3d at 1247. The *Fox* court rejected the defendants' arguments, found that the plaintiff had standing, and stated that the defendants "placed too much emphasis on the mere fact Plaintiff paid the charges as evidencing the absence of any injury." *Id.* at 1247-48. The *Fox* court framed the issue as whether plaintiff's payment of the charges was involuntary, not whether plaintiff contested the charges. *Id.* at 1248 ("Properly understood, Plaintiff's allegations are his payment of the charges was involuntary, and whether he had the right or even the knowledge to contest the charges at the time he paid them following inadequate disclosure does not cancel his injury.").

Here, Defendants move to dismiss Plaintiff's FDUTPA claims for actual damages purportedly pursuant to Federal Rule of Civil Procedure 12(b)(6), and not based on lack of standing. Defendants appear to argue that Plaintiff has failed to allege he has suffered actual damages as he "paid precisely what he was told he would pay" [ECF No. 31, at 9]. Notwithstanding that Defendants' challenges are based on Plaintiff's alleged failure to plead actual damages, this Court declines to find that Plaintiff is required to contest the charges in question before he can adequately allege his FDUTPA claims for actual damages or that Plaintiff's payment of the charges forecloses said claims at this time. *Fox*, 309 F.Supp.3d at 1248.[1] Based on the Court's review of Plaintiff's Complaint, this Court finds that Plaintiff has sufficiently alleged actual damages under FDUTPA at this juncture, namely, that Defendants allegedly charged him certain fees without proper notice, and in some cases, incorrect notice, such as the service charge at the Pool Bar (charging a 20% service charge instead of the 18% displayed on the menu) or the room service delivery charge (charging $4.00 instead of $3.50 displayed on in-room dining menu). Specifically, Plaintiff's actual damages are what he was charged (and ultimately paid) less what he would have

---

[1] This Court reached the same conclusion in *De Lara v. Edition Management LLC*, Case Number 18-22630 (S.D. Fla. Feb. 5, 2019) [ECF No. 15].

paid (including any gratuity) without a predetermined service charge.[2] Accordingly, Defendants' Motion to Dismiss Plaintiff's FDUTPA claims for actual damages is denied.

## IV. Conclusion

Accordingly, for the foregoing reasons, it is

**ORDERED and ADJUDGED** that

1. Defendants' Motion to Dismiss Class Action Complaint [ECF No. 27] is **GRANTED IN PART AND DENIED IN PART** as stated herein.
2. Plaintiff's claims are **DISMISSED with prejudice** insofar as he purports to bring claims against the Mondrian Bar on behalf of himself or others similarly situated [ECF No. 1 ¶ 67].

DONE AND ORDERED in Chambers at Miami, Florida, this 25 day of February, 2019.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record

---

[2] For example, Plaintiff's actual damages at the Mondrian Caffè would be the check's total (including the 20% gratuity service charge) minus the total Plaintiff would have paid (with any gratuity) without the 20% service charge.